# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PETER KLOPFENSTEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-01106 JAR |
| ) | |
| ANDREW SAUL, Commissioner, ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Peter Klopfenstein's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

### I. Background

Plaintiff applied for disability insurance benefits and supplemental security income benefits on June 11, 2015, alleging disability as of November 1, 2011 due to multi-level degenerative disc disease, left sciatica, lumbago, complex regional pain syndrome, and social anxiety disorder. After his application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on July 31, 2017, the ALJ issued a written decision on October 11, 2017, denying Plaintiff's application.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for his predecessor, Acting Commissioner Nancy A. Berryhill. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff's request for review by the Appeals Council was denied on May 9, 2108. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Plaintiff's Statement of Uncontroverted Facts (Doc. No. 17-1) to the extent they are admitted by the Commissioner (Doc. No. 22-1). The Court also adopts Defendant's Statement of Additional Facts. (Doc. No. 22-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III. Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have

reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

     (1) The findings of credibility made by the ALJ;

     (2) The education, background, work history, and age of the claimant;

     (3) The medical evidence given by the claimant's treating physicians;

     (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

     (5) The corroboration by third parties of the claimant's physical impairment;

     (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

     (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any

3

step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

Fourth, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

### IV. Decision of the ALJ

The ALJ found Plaintiff had the severe impairments of lumbago[2], small fiber neuropathy, left wrist radial neuropathy, and generalized anxiety disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform a reduced range of light work, i.e., he can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently and can sit, stand and/or walk six hours each in an eight-hour workday. He must never use his feet for foot control operations. He can use his hands and arms frequently for handling and fingering objects. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds.

---

[2] Lumbago is a general term used to describe mild to severe pain in the lower back.

He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid working at unprotected heights and around moving mechanical parts, and operating a motor vehicle. He is limited to work that involves only simple routine tasks and making simple work-related decisions and can have occasional contact with the public, coworkers and supervisors. (Tr. 14-15).

The ALJ found that Plaintiff is unable to perform any past relevant work (Tr. 24), but that there are jobs in the national economy that he can perform given his age (24), education (associates degree), work experience and RFC, such as production assembler, packager, and laundry worker. (Tr. 24-25). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 25).

## V. Discussion

In his appeal of the ALJ's decision, Plaintiff raises three issues. First, Plaintiff argues the ALJ improperly weighed the medical opinion evidence, specifically the findings and opinions of his treating physician Timothy Grove, Ph.D., and the state agency psychologist Marcia Toll, Psy.D. (Doc. No. 17 at 2-7). Second, Plaintiff argues the ALJ's RFC findings were not supported by any medical evidence. (Id. at 7-8). Third, Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence. (Id. at 8-14).

### A. Credibility[3]

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to her determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's

---

[3] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

6

determination regarding her RFC was influenced by his determination that her allegations were not credible."); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

In evaluating a claimant's subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Morris v. Berryhill, No. 1:17-CV-00212 NCC, 2019 WL 1129990, at *3 (E.D. Mo. Mar. 12, 2019) (citing Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Id. (quoting Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001)). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Id. (quoting Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003)).

The ALJ began with a detailed summary of Plaintiff's reports of constant pain in his legs, feet, ankles, left knee, lower back, upper extremities, hands and forearms, as well as social anxiety. (Tr. 15-17). Plaintiff testified he has been unable to work full-time since November 2011 because he cannot stand for longer than 20 minutes without swelling and sharp pain in his feet; is unable to lift more than 10 to 15 pounds; and his ability to walk is severely limited due to the issues with his lower extremities. Plaintiff also experiences tingling, numbness, and pain in his arms and hands and tremors that increase with activity and lead to a loss of coordination and

difficulty sitting, standing for long periods of time, bending and twisting. (Tr. 40-41). Plaintiff further testified he has anxiety in social situations that keeps him from leaving his house and accomplishing things. (Tr. 47-48). However, the ALJ expressly found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record. (Tr. 23).

The ALJ first considered the objective medical findings by Plaintiff's treating physicians. While recognizing that some examination findings showed abnormal or antalgic gait and occasional use of a four-point cane (Tr. 22, 47, 266, 314, 329, 344, 347, 350, 353, 355, 358-59, 361-62, 364, 371, 374, 380, 386, 389, 392, 406, 412, 415, 421, 423, 427, 432, 434, 437, 709, 721, 743, 745, 750, 755, 794, 982, 1040, 1067, 1112), the ALJ noted that none of those findings included significant deficits in strength, neurological function, or range of motion and in fact indicated decreased or minimally antalgic gait and the ability to sit in and rise from a chair more easily (Tr. 22, 356, 377, 383, 396, 398, 400, 402, 404, 408, 410, 413, 425, 429, 431), normal gait (Tr. 305, 445, 1044), and no spine tenderness (Tr. 720, 811). The ALJ further noted there was no medical evidence that Plaintiff was prescribed, or determined to require, the prolonged use of an assistive device such as a cane. (Tr. 22). An MRI of the lumbar spine performed in 2012 showed minimal central disc bulging, and no significant disc abnormality or foraminal stenosis (Tr. 22, 296); other diagnostic testing showed no abnormalities (Tr. 330, 835). Indeed, the record indicates that Plaintiff has been seen by four surgeons, none of whom recommended surgical intervention. (Tr. 982, 1039). Plaintiff was not frequently reported to be in acute distress. (Tr. 22). Further, his back pain was well controlled with medication management with no reported side effects (Tr. 811, 862, 887), exercise and stretching, and aquatic therapy (Tr. 319-327, 702-

05, 755-789). See Hensley v. Colvin, 829 F.3d 926, 933 (8th Cir. 2016) (impairment controlled by treatment or medication cannot be considered disabling); Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (same).

As for Plaintiff's anxiety disorder, the ALJ acknowledged that Plaintiff's treatment records reflected social phobia and high levels of anxiety that affect his ability to socialize and sustain work activity. (Tr. 22). However, the ALJ noted that none of the records document significant abnormalities or deficits in, among other things, Plaintiff's mood, affect, thought processes, concentration, attention, persistence or pace, or activities of daily living. (Tr. 22, 319-320, 344, 368, 374, 377, 380, 383, 393, 396, 398, 400, 402, 404, 406, 408, 410, 412, 415, 418, 429-432, 434, 437, 453, 474-487, 723, 744, 794, 811, 835, 887, 907, 927, 944, 964, 983, 1015, 1017-19, 1021, 1023-28, 1030-31, 1033-1038, 1044). Patient Health Questionnaires showed scores consistent with minimal depressive symptoms. (Tr. 20, 815, 842, 866, 891, 910, 929, 947, 990). Plaintiff frequently reported improved anxiety (Tr. 324, 399, 401, 438, 533, 538, 550, 554, 556, 703, 1033), and that medication helped (Tr. 325, 483-84). See Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of effective medication resulting in relief ... may diminish the credibility of a claimant's complaints."). The ALJ further noted that Plaintiff had no frequent or long-term psychiatric hospitalizations. (Tr. 22).

The ALJ also considered Plaintiff's noncompliance with treatment. The record shows that Plaintiff did not attend all of his doctor appointments (Tr. 17, 22, 463, 492, 547, 552, 557, 577, 610, 614, 624, 634, 643, 1032) and at times did not take his medications as prescribed (Tr. 17-18, 322-24, 346, 407, 409, 411, 414, 417, 419-20). The ALJ noted that Plaintiff was hesitant to try a spinal cord stimulator and declined an MRI of his lumbar spine. (Tr. 20, 908, 983). Plaintiff was also noncompliant with the recommendations of his pain specialist, Christopher Beuer, M.D.,

that he wean himself off opioids and exercise more. (Tr. 20, 22, 23, 811, 833, 835, 860, 862, 887, 907-08, 927-28, 944-45, 964-65, 983). Dr. Beuer was concerned that Plaintiff's pain was consistent with "opioid-induced hyperalgesia," a condition whereby a patient's sensitivity to pain actually increases due to long-term use of opioid medications.[4] Plaintiff argues there is no medical evidence that weaning off narcotics would have provided him with additional or better pain relief. In any event, the ALJ properly considered Plaintiff's noncompliance with treatment recommendations, and properly considered Dr. Beuer's statements that Plaintiff's back pain was well controlled with medication. (Tr. 860). See Vance v. Berryhill, 860 F.3d 1114, 1121 (8th Cir. 2017) (claimant's inability to follow treatment recommendations weighed against his credibility).

After reviewing this objective medical evidence, the ALJ concluded that Plaintiff's statements concerning the limiting effects of his alleged symptoms were inconsistent with his treatment history and clinical findings. (Tr. 23). An ALJ may determine that subjective complaints of disabling pain are not credible in light of objective medical evidence to the contrary, as the ALJ did here. Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

Next, the ALJ found that Plaintiff's activities of daily living were inconsistent with total disability. (Tr. 14-19). At the time of the hearing, Plaintiff was living on his own, taking some college level courses, tutoring, and playing guitar in a band. (Tr. 17). He has a valid drivers' license and drives approximately three to four days a week. He is able to do laundry and occasional light housekeeping, grocery shop three to four times a month, care for pets, read, watch television, use a computer, play video games and manage his finances. He also spent time with others two to three times a week, talking on the phone, texting, and visiting in person. (Tr.

---

[4] See www.ncbi.nlm.nih.gov/pubmed/21412369 (last visited Aug. 14, 2019).

10

264). Activities such as preparing meals, doing housework, shopping for groceries, handling money, watching television, and driving a car when necessary, among other things, show that Plaintiff can work. Thomas, 881 F.3d at 676 (citing Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007); Hacker v. Barnhart, 459 F.3d 934, 937–38 (8th Cir. 2006); Ellis v. Barnhart, 392 F.3d 988, 995 (8th Cir. 2005)).

Plaintiff argues a claimant's ability to do some limited daily activities does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity, citing Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995). While that is a correct statement, the Court finds no error. The Eighth Circuit has recognized that its cases "send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain," Morris, 2019 WL 1129990, at *6 (quoting Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009)); however, the caselaw generally suggests that where such daily activities are inconsistent with a claimant's subjective complaints, it is proper for the ALJ to consider them in conjunction with other factors affecting the credibility of a Plaintiff's complaints, id. (citing Halverson v. Astrue, 600 F.3d 922, 932–33 (8th Cir. 2010)). Even if Plaintiff is limited in performing daily activities or needs assistance, it was not unreasonable for the ALJ to consider his ability to perform them along with other relevant factors in assessing the credibility of his allegations of disabling pain. See Delmater v. Berryhill, No. 2:16-CV-70-SPM, 2018 WL 1508868, at *10 (E.D. Mo. Mar. 27, 2018).

In sum, the Court finds that the ALJ conducted an express credibility determination, considered several of the relevant factors, and gave good reasons for finding Plaintiff's subjective complaints not entirely credible. The Court will therefore defer to that analysis. See Renstrom, 680 F.3d at 1065 ("If an ALJ explicitly discredits the claimant's testimony and gives

good reason for doing so, [the court] will normally defer to the ALJ's credibility determination.").

**B. Medical opinion evidence**

Under the applicable social security regulations, the opinion of a treating physician is normally entitled to controlling weight.[5] Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018) (citation omitted). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and "[t]he Commissioner may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." Id.

The ALJ should consider several factors in weighing medical opinions from a treating source, including the length of the treatment relationship and the frequency of examination. Lawson v. Colvin, 807 F.3d 962, 965 (8th Cir. 2015) (quoting Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007)). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give "good reasons" for doing so. Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016); 20 C.F.R. § 404.1527(c)(2)). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010).

---

[5] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c. Plaintiff filed his claim in 2015, so the previous Regulations apply.

### 1. Timothy Grove, Ph.D.

Dr. Grove completed a Mental Residual Functional Capacity Questionnaire on June 28, 2017, wherein he opined that Plaintiff's social phobia and generalized anxiety would make functioning in a work environment difficult and impossible for any length of time. Dr. Grove further opined that due to the presence of both severe and chronic pain and severe anxiety, it was unlikely that Plaintiff would be able to work on either a part-time or full-time basis at any time in the near future. (Tr. 1121-1125). More specifically, Dr. Grove found Plaintiff had unlimited or very good ability to remember work-like procedures; understand, remember, and carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; interact appropriately with the general public, coworkers, and supervisors; and maintain socially appropriate behavior. (Tr. 1123). Dr. Grove assessed Plaintiff with limited but satisfactory ability to maintain attention for two-hour segments; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a routine work setting. (Id.). Dr. Grove assessed Plaintiff with serious limitations in sustaining an ordinary routine without special supervision and dealing with normal work stress; and an inability to meet competitive standards in maintaining regular attendance and punctuality (missing four or more days of work per month); completing a normal workday and workweek without interruption from psychologically-based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1123-24). Lastly, Dr. Grove stated that Plaintiff's psychiatric condition exacerbated his experience of pain or other physical symptoms.

13

The ALJ discussed Dr. Grove's opinion and gave it little weight. (Tr. 21). The ALJ noted a significant break in treatment of almost three years – from 2014 to 2017 – and only nine[6] visits in 2017 prior to the completion of the MRFC, which called into question Dr. Grove's opinion that Plaintiff had the assessed limitations since 2010. (Tr. 21). The ALJ also found Dr. Grove's opinion inconsistent with the record as a whole, including his own progress notes, and that if Dr. Grove intended to state that Plaintiff could not perform any substantial gainful activity, such a statement is an opinion regarding disabled status which is reserved to the Commissioner and thus not entitled to controlling weight or special significance. (Tr. 21-22).

Plaintiff first argues the ALJ failed to discuss the extent, length, or frequency of his treating relationship with Dr. Grove, and that a break in treatment is not a good reason for affording less weight to Dr. Grove's opinion given his extensive treatment history with Plaintiff – over 200 sessions between 2010 and May 2014 and 10 visits over 4 months in 2017. (Doc. No. 17 at 3-4). The Court finds no error. Plaintiff correctly points out that the length of a treatment relationship is a proper factor to consider in weighing the opinion of a treating physician. See 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, the ALJ is not required to expressly discuss every factor set forth in the regulations in assessing Dr. Grove's opinion. See Derda v. Astrue, No. 4:09–CV–01847–AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) ("While an ALJ must consider all of the factors set forth in 20 C.F.R. § 404.1527[ ], he need not explicitly address each of the factors."). Failure to discuss each factor does not mean the ALJ did not consider them. Moreover, the ALJ reasonably found that a nearly three-year break in treatment cut against Dr. Grove's opinion that Plaintiff had the assessed limitations since 2010.

---

[6] The record actually shows Dr. Grove saw Plaintiff 10 times from February 22, 2017 through June 27, 2017. (Tr. 1121).

14

Plaintiff also argues the ALJ incorrectly found Dr. Grove's opinion inconsistent with the record as a whole given the evidence of complaints of chronic pain in multiple areas of Plaintiff's body, as well as years of psychotherapy and psychological treatment records discussing his anxiety and pain. (Doc. No. 17 at 4-5). The Court acknowledges there is evidence in the record tending to support Plaintiff's assertion that his impairments imposed disabling limitations. However, the Court's role is limited to reviewing whether substantial evidence supports the weight given by the ALJ to a medical source, not deciding whether the evidence supports the claimant's view of the evidence. Brown, 611 F.3d at 951.

Here, there is substantial evidence to support the ALJ's decision to discount Dr. Grove's opinions. As discussed above, the evidence showed a range of daily activities, noncompliance with treatment, and examination findings that were inconsistent with disability, including Dr. Grove's own treatment notes showing Plaintiff was only mildly limited or unlimited in his ability to remember work-like procedures; understand, remember and carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; maintain attention for two-hour segments; ask questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; interact appropriately with the general public, coworkers and supervisors; respond appropriately to changes in a routine work setting; and maintain socially appropriate behavior. (Tr. 1123). This, the ALJ explains, is inconsistent with Dr. Grove's opinion that Plaintiff's anxiety prevented him from engaging in social activities or working. (Tr. 21.).

### 2. Marcia Toll, Psy.D.

An ALJ must consider the opinions of State agency psychological consultants according to 20 C.F.R. §§ 404.1527 "because [ ] State agency medical or psychological consultants are

15

highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a. Therefore, like other medical source opinions, the ALJ must weigh the opinions of State agency psychological consultants under the rules set out in 20 C.F.R. § 404.1527, providing appropriate explanations for accepting or rejecting such opinions. SSR 96-5p.

Marcia Toll, Psy.D., a state agency psychological consultant, completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment on September 30, 2015, finding Plaintiff had the severe mental impairment of anxiety disorder causing moderate limitations in maintaining social functioning and opining that Plaintiff would be capable of performing work in a limited social environment to further reduce stress. (Tr. 64-75). The ALJ gave Dr. Toll's findings and opinions some weight because she is a medical expert who had an opportunity to review the evidence through the date of her determination, and because her findings were generally consistent with the records as a whole, as of the date of her determination. (Tr. 23).

Plaintiff argues the ALJ lacked substantial evidence to conclude that Dr. Toll's opinion was generally consistent with the record as a whole because she did not cite to any records or reports, making it impossible to determine how she reached her conclusions and whether she actually reviewed all of the record evidence. Plaintiff further argues the ALJ did not accurately summarize Dr. Toll's opinion, which included moderate limitations in Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others, interact appropriately with the public, accept instruction and respond appropriately to criticism, and maintain socially appropriate behavior. (Tr. 72-73).

The Commissioner responds that Dr. Toll pointed to treatment notes indicating Plaintiff was treated for anxiety, referenced a June 2015 treatment note saying his chronic anxiety was controlled and stable and that he was not suicidal, noted negative depression and hallucination findings, relied on a June 2014 examination revealing he was oriented with appropriate mood, and noted additional findings of controlled anxiety, and included a description of his daily activities. (Tr. 69, 81). The Psychiatric Review Technique Form also listed the evidence that was in the record at the time of Dr. Toll's review. (Tr. 65-67, 77-79). Further, the ALJ specifically noted that Dr. Toll had the opportunity to review the available evidence in rendering her opinion. (Tr. 23).

Contrary to Plaintiff's arguments, the ALJ accurately characterized Dr. Toll's opinion as finding Plaintiff had moderate social limitations and that he would be capable of performing work in a limited social environment to further reduce stress (Tr. 23). Plaintiff fails to establish that Dr. Toll's assessment of moderate limitations in various categories conflicts with the ALJ's RFC for work involving simple, routine tasks; making simple work-related decisions; and having occasional social contact. (Tr. 15, 72-73, 84-85). Indeed, in giving Dr. Toll's opinion some weight, the ALJ properly concluded that her opinion was generally consistent with the record as a whole, which showed a wide range of daily activities, noncompliance with treatment, examination findings that were inconsistent with disability, and improvement with treatment.

### C. RFC

Lastly, Plaintiff argues the ALJ failed to include a narrative discussion describing how the medical record evidence supports a finding that he can perform light work. Plaintiff argues there was no state agency physician who reviewed his physical impairments and no consultative exam was performed.

A claimant's RFC is "the most a claimant can do despite her limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). Because a claimant's RFC is a medical question, it must be supported by some medical evidence of the claimant's ability to function in the workplace. Hensley, 829 F.3d at 932. However, "there is no requirement that an RFC finding be supported by a specific medical opinion," id., or that there must be medical evidence that precisely supports each component of the RFC, Peterson v. Colvin, No. 13-0329-CV-W-ODS, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013). See also Davis v. Colvin, No. 3:14-CV-05075 MDH, 2015 WL 1964791, at *5 (W.D. Mo. May 1, 2015) ("SSR 96–8P does not require an ALJ to list each RFC limitation followed by the specific evidence that supports it; such a requirement would undermine the "all relevant evidence" standard and would result in duplicative discussions of the same evidence."). Instead, the ALJ must determine a claimant's RFC based on a review of the record as a whole, "including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Here, the ALJ evaluated all of the medical opinion evidence of record and adequately explained his reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as whole supports the ALJ's evaluation of the medical opinion evidence.

**VI. Conclusion**

For all these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

18

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 16th day of September, 2019.

                                                      _/s/ John A. Ross_
                                                      JOHN A. ROSS
                                                    UNITED STATES DISTRICT JUDGE